**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JOYCE NIXON                                          Case No. 1:11-cv-784

            Plaintiff,                          Barrett, J.
   v.                                              Bowman, M.J.

PATRICK DONAHOE, POSTMASTER GENERAL,

            Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff, proceeding pro se and *in forma pauperis*, initiated this employment discrimination case against her former employer on November 4, 2011. Pursuant to local practice, the case has been referred to the undersigned magistrate judge for disposition of all pretrial matters, including the filing of a report and recommendation on any dispositive motions. *See* 28 U.S.C. §636(b).

A few months after Plaintiff filed her complaint, the Court granted the Defendants' motion for partial dismissal of persons improperly named as Defendants, with the substitution of the Postmaster General as the sole proper Defendant. (Docs. 11, 15). In May 2012, Plaintiff obtained counsel to represent her. On June 22, 2012, through her new counsel, Plaintiff filed an amended complaint (Doc. 27). Following the conclusion of discovery, Defendant filed a motion for summary judgment. (Doc. 29). Plaintiff has filed a response in opposition to Defendant's motion, to which Defendant has filed a reply. (Docs. 31, 32). For the reasons that follow, I now recommend that the

1

Defendant's motion be granted.

## I. Background

The following background is derived from the record, with all disputed facts construed in Plaintiff's favor. In 1995, Plaintiff began working for the United States Postal Service at its rural West Union, Ohio post office as a substitute carrier. She testified that she was promoted to a full-time rural letter carrier position in 2004. As a rural carrier, Plaintiff used her own vehicle to deliver her mail route.

On March 15, 2007, the Postmaster for the West Union Station, then Jonathon Kerry Osborne, issued Plaintiff a "Letter of Warning" noting that Plaintiff had committed several violations of Postal Rules, including giving mail to her mother to bring to the station, falsifying her time record, and taking the "arrow key" home with her. (Doc. 29-1 at 37, Exhibit A). Plaintiff went on medical leave shortly after this Letter of Warning was issued. Prior to Plaintiff's return from medical leave on July 1, 2007, Mr. Osborne left the West Union Post Office, and Jody Evans began working as "Officer in Charge" (Acting Postmaster) at West Union. From the day she returned to work under the supervisory authority of Mr. Evans, Plaintiff testified that she believed that she was more closely scrutinized by him than were other employees (regardless of gender).

On September 20, 2007, Mr. Evans issued Plaintiff a second Letter of Warning for Unsatisfactory Performance, specifically noting that the amount of time in which Plaintiff performed her route was "way over your standard." (Doc. 29-2 at 26, Exhibit 3). The same document warned Plaintiff that she would be "evaluated further in the future." (*Id.*).

2

On December 18, 2007, Mr. Evans, with the approval of his superior, Steven Williams, the Acting Manager of Post Office Operations in Columbus, Ohio, issued an "Emergency Placement in Off-Duty Status" order to Plaintiff.  (Doc. 29-2 at 27, Exhibit 4).  Emergency Placement is the action taken when the Postal Service investigates serious charges of employee misconduct.  Similar to the prior alleged violations, the order charged Plaintiff with falsifying her time record on Friday, December 14, 2007 by reporting that she completed her route and departed the Post Office earlier than the times that Mr. Evans observed her.  The disciplinary record stated that Plaintiff would be in "off-duty status until disposition of the case." (*Id.*).

On January 10, 2008, Mr. Evans, again with the concurring authority of Mr. Williams,[1] issued a "Notice of Removal" letter to Plaintiff, indicating that she was being terminated based upon her unsatisfactory performance.  The Notice listed Plaintiff's improper time reports, and stated that she was "frequently late leaving the office and returning to the office," and that "when the route is covered by the sub, she is able to meet the schedule times."  In addition, the Notice cites a customer complaint that mail was delivered late, and references "numerous talks with you advising you that you are taking too long in the office and on the street and that you need to improve your time." (Doc. 29-2 at 31, Exhibit 7).  The Notice indicates that in arriving at the disciplinary action of removal, the earlier March 15, 2007 Letter of Warning also was considered. (*Id.* at 32).

Plaintiff grieved her removal as well as the December 2007 Emergency

---

[1]Although the Notice is dated January 10, 2008, the signatures are dated January 14, 2008.

Placement action under the Collective Bargaining Agreement (CBA). Plaintiff was unable to resolve her grievance at the first step of the grievance process. At some point during the grievance process, Helen Pence replaced Mr. Williams as the Acting Manager of Post Office Operations in Columbus, Ohio. Therefore, at "Step Two" of the grievance process, Plaintiff's union representative, Dave King, met with Ms. Pence for a hearing. Ms. Pence and Mr. King reached an agreement, dated February 28, 2008, to rescind the Emergency Placement and reduce the proposed removal to a "14 day no-time-off suspension" that would remain in Ms. Nixon's file for a period of one year. (Doc. 29-2 at 28, Exhibit 5). The parties further agreed that Plaintiff would attend additional training at the rural training academy, and that management would address any future performance issues "in a timely manner." (*Id.*).

Based upon the resolution of her grievance, Plaintiff returned to work on March 17, 2008. Plaintiff's affidavit in opposition to Defendant's motion avers that upon her return, she noticed that the record of her route, called the Edit Book, had been altered to show that it was approximately 20 miles and 200 boxes fewer than before. Plaintiff suggests that Evans altered the Book to make it appear as if Plaintiff was slower than she actually was in completing her route, and asserts that she fought to have the Edit Book corrected upon her return to work. (*See* Doc. 31-1).

On the date of her return, Evans instructed Plaintiff in writing that she would be assigned to attend additional training at the Rural Carrier Academy "as soon as possible," and that after completion of additional training, she would "be expected to run your route in an efficient manner," with her time to be "monitored daily." (Doc. 29-2 at

4

30, Exhibit 6).  On each of the following three days, from March 18, 2008 through March 20, 2008, Plaintiff returned late from her route.  Plaintiff subsequently reported to the Rural Carrier Academy in Jackson, Ohio for additional training - approximately fifty miles from West Union.

In the following months, Plaintiff testified that she observed that a friend of Mr. Evans, a non-postal employee named Tom White who worked for a local power company, was following her on her route and was engaged in surveillance of her. Plaintiff believed the surveillance was at the behest of Mr. Evans, although Mr. Evans has denied any knowledge of such surveillance and testified that he did not instruct Mr. White to conduct surveillance.

On June 9, 2008, Plaintiff contacted her local EEO office in order to complain about what she perceived as unequal treatment and undue scrutiny.  She alleged disparate treatment based upon her gender and her physical condition.  Plaintiff complained that Mr. Evans had followed her or conducted surveillance on her while she delivered mail, and that Mr. White had also conducted surveillance on Mr. Evans' behalf.  She also complained about Evans discussing her negatively with co-workers. (29-1 at 28, Nixon Transcript).  Plaintiff withdrew her informal EEOC complaint following a redress hearing (mediation) held on or about June 29, 2008.  (Doc. 29-1 at 26-28; *see also* Doc. 29-3 at 3, Exhibit 3, Pence affidavit).  At that mediation, Evans agreed to refrain from making negative comments about Plaintiff to her co-workers, and agreed to review and treat her on an equal basis with other West Union employees.

Plaintiff argues that Evans did not comply with the mediated agreement.[2] Instead, in July 2008, Mr. Evans met with Plaintiff and again advised her that he had noted that she was consistently running nine minutes late in completing her route.  A letter memorializes that conversation.  (Doc. 29-2 at 33, Exhibit 8). The letter states: "Mail volume is down significantly and you should be running under your evaluated time."  He further advises that he plans to "hold off my request for discipline at this time" in light of recent improvement in Plaintiff's performance, but that he will continue monitoring Plaintiff's time "on a weekly basis."  Mr. Evans concludes by warning Plaintiff that "[w]hen the mail volume picks back up you are going to need to maintain your current times" and that a failure "to perform your job in a timely and efficient manner will result in further discipline."  (*Id.*).

On or about September 16, 2008, Plaintiff took additional medical leave, returning to work on or about October 1, 2008.  Following her return, Plaintiff allegedly engaged in additional misconduct involving the falsification of her time records.

On November 4, 2008, Plaintiff was issued another Notice of Removal for Improper Conduct/Unsatisfactory Performance.  (Doc. 29-2 at 37, Exhibit 11).  The Notice was signed by both Mr. Evans and Ms. Pence.  The Notice of Removal documented two dates, October 7 and October 17, 2008, on which Plaintiff allegedly falsified her time records.  On October 7, 2008, the Notice charges that Plaintiff deviated from her route without authorization in order to deliver mail to the Seamon, Ohio Post Office, after having missed the dispatch truck at the West Union Post Office due to her

---

[2]It is unclear whether the parties' agreement was ever reduced to writing; no written version was filed in connection with the pending motion.

late arrival.  The dispatch driver indicated that Plaintiff had engaged in the same conduct on other occasions.  In addition, the Notice documented the dates of October 14-16, 2008 on which Plaintiff did not deliver mail because her vehicle had broken down.  (Doc. 29-2 at 37-39, Exhibit 11). On October 17, 2008, the Notice alleges that Plaintiff disobeyed an order to immediately leave her route and return to the Post Office. The Notice accuses Plaintiff of "repeatedly" extending her work hours "by working over the evaluated time for your route," and further accuses Plaintiff of failing to be "honest and trustworthy."  (*Id.* at 39).  Last, the Notice references the prior two formal disciplinary actions against Plaintiff, including the March 2007 Letter of Warning and the 14-day suspension per agreement dated February 28, 2008.

On December 4, 2008, Plaintiff filed a formal EEO Complaint of Discrimination in the Postal Service with the EEOC office in Columbus, Ohio.  In that complaint, Plaintiff checked boxes for race discrimination (identified as Native American and white), religious discrimination (identified as Baptist), Sex discrimination, Age discrimination (age 54), retaliation, and disability discrimination (specified as back injury, cancer, and heart attack).  Plaintiff testified that she checked every possible discrimination box because she wanted to cover all her bases.  Her complaint was subsequently dismissed without a hearing, after which Plaintiff timely filed a civil complaint in this Court.  In this Court, Plaintiff has now abandoned all claims except for "gender discrimination and retaliation." (Doc. 31 at 5).[3]

---

[3]On the basis of this representation, the undersigned finds no need to discuss Defendant's alternative arguments concerning Plaintiff's original disability discrimination claim.  To the extent that the arguments have been considered, they only add to the conclusion that Defendant is entitled to judgment

## II. Analysis

### A. Summary Judgment Standard

In considering a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007)(internal quotation marks and additional citations omitted).  "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c), internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the nonmoving party, however, does not mean that the court must find a factual dispute where record evidence contradicts wholly unsupported allegations.  "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505 (1986).  The non-moving party's evidence "is to be

---

as a matter of law.

believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (emphasis added).

Although reasonable inferences must be drawn in favor of the opposing party, inferences are not to be drawn out of thin air. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (additional citation omitted).

### B. Defendant's Arguments in Favor of Summary Judgment

#### 1. Elements of Gender Discrimination and Retaliation Claims

Plaintiff has no direct evidence of gender discrimination or retaliation, and therefore seeks to prove both claims through indirect evidence, under the familiar burden-shifting analysis of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1983). To make out a prima facie case of gender discrimination, Plaintiff must show that: (1) she is a member of a protected class; (2) who suffered an adverse employment action; (3) that she was qualified for her positions; and (4) that she was replaced by a person outside the protected class or that a similarly-situated, non-protected class member was more favorably treated. *See id.*, 411 U.S. at 802.  If a plaintiff satisfies her prima facie burden, the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action.  If the Defendant satisfies its burden of production, then the burden shifts back to the Plaintiff to show that the Defendant's proffered reason for the

adverse action was really a pretext for unlawful discrimination.  *Id.*

To prove her second claim of retaliation, Plaintiff must show that she engaged in protected activity; that her employer knew of that activity; that she was subjected to an adverse employment action; and that there was a causal connection between the activity and the adverse employment action.  *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009)(internal quotation marks and additional citation omitted).   "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington North and Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006).   In addition, the employee is not insulated from incidental slights, but only from harm that is sufficiently serious that it would dissuade "a reasonable worker from making or supporting a charge of discrimination."  *White*, 548 U.S. at 57.   As with her discrimination claim, if Plaintiff proves a prima facie case of retaliation, the burden of production shifts to the Defendant to "articulate some legitimate, non-discriminatory reason" for its actions.   *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 862 (6th Cir. 1997)(quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981).   If the Defendant meets that burden, then Plaintiff bears the burden of demonstrating that the employer's proffered reason was pretextual.  *Id.* (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993)).

One of the central tenets of Plaintiff's claim is that she was singled out for extra scrutiny by Mr. Evans (though notably, not by his predecessor Mr. Osborne, or Mr. Williams or Ms. Pence).  But that contention, even if proven, would not *alone* support a claim of gender discrimination or illegal retaliation.   Neither a personality conflict

between a supervisor and an employee, nor a supervisor's decision to single out an employee for extra scrutiny following a history of rule violations, violates Title VII, absent some evidence that the conduct was motivated by racial or gender bias, or by some other unlawful animus.

### 2. The Defendant's Articulated Non-Discriminatory Reason

Although the Defendant does not fully concede Plaintiff's prima facie case on either the gender discrimination claim or the retaliation claim, Defendant argues that, even if Plaintiff could prove her prima facie case, Defendant is entitled to judgment based upon the non-discriminatory reason provided for Plaintiff's termination.  If a plaintiff fails to demonstrate that the employer's articulated non-discriminatory reason for the adverse employment action is pretextual, then summary judgment is appropriate without further evaluation of a plaintiff's prima facie case.  *Coomer v. Bethesda Hosp. Inc.*, 370 F.3d 499, 511 (6th Cir. 2004).

In this case, Mr. Evans testified in conformity with the written disciplinary record that Plaintiff's failure to accurately record her time and perform her duties led to her termination.  The affidavit of Ms. Pence similarly notes that falsification of time records is a serious offense subject to discipline, and that termination ordinarily is the next step above a suspension in the progressive discipline system employed by the Postal Service.  (Doc. 29-3, ¶¶6, 9).  Plaintiff does not dispute that her record contained both the March 2007 disciplinary Notice (by the Postmaster who preceded Mr. Evans, for violations she does not dispute) and a February 28, 2008 suspension for additional violations, imposed pursuant to a settlement of her prior grievance.

11

In short, Defendant has met its burden of production under *McDonnell-Douglas* to articulate a legitimate, non-discriminatory reason for Plaintiff's termination. Therefore, it is the Plaintiff's burden to show that the articulated reason was pretextual. As Defendant points out in its reply, Plaintiff does not address the issue of pretext at all in her opposition to Defendant's motion, and thus has failed to carry her burden on the issue. *See Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 544 (6th Cir. 2008).

The Defendant's action in terminating Plaintiff was objectively reasonable and non-discriminatory. Four different supervisory personnel (Mr. Osborne, Ms. Pence, Mr. Williams, and Mr. Evans) imposed progressive discipline on Plaintiff after reviewing her transgressions. After she grieved the the November 2008 "Emergency Action" and the subsequent Notice of termination, she and Defendant settled the dispute by reducing the discipline imposed to a 14-day "no time off" suspension. However, part of the settlement included mandatory additional training for Plaintiff, and that the disciplinary record would remain in Plaintiff's file for a period of one year. Plaintiff continued to have performance issues during that year, with late deliveries, time sheet discrepancies/ falsifications, and a failure to correct the deficiencies about which she had been repeatedly counseled. She does not dispute that Mr. Evans received complaints from customers about late deliveries, and that their outgoing mail was not being timely picked up by Plaintiff. Plaintiff also does not dispute that the outgoing mail was not timely delivered (to the West Union station) for transport on the distribution delivery truck. In fact, the affidavit of Ms. Pence reflects that Plaintiff admitted that she would do "nothing"

12

to change her performance if Ms. Pence chose not to recommend termination. (Doc. 29-3, ¶9). Ms. Pence states that Plaintiff's gender played no role in her decision to terminate Plaintiff. (Doc. 29-3 at ¶11).

Plaintiff does not dispute any of these facts. Rather than disputing her rule violations, Plaintiff merely reiterates that Mr. Evans (alone) singled her out for extra scrutiny, thereby discovering additional transgressions that, presumably, might otherwise have gone undetected. However, to rebut Defendant's proffered explanation, Plaintiff must show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's conduct, or (3) that they were insufficient to motivate the challenged conduct. *See Chen v. Dow Chemical Co.*, 580 F.3d 394 (6th Cir. 2009).

The Sixth Circuit has categorized different evidentiary bases for three types of pretext showings. The first type of showing requires evidence that the proffered bases for the adverse actions never happened, i.e., that they are "factually false." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)(additional citation omitted), overruled on other grounds by *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009). Plaintiff cannot show this because she does not seriously dispute the factual basis for her violations.[4] She also does not dispute the evidence offered by Defendant that such violations are sufficient for termination under Postal Service

---

[4]In opposition to Defendant's motion, Plaintiff points to her affidavit, which avers that Mr. Evans routinely left work at approximately 4:30 p.m. (Doc. 31-1). Any inference that could be drawn from Plaintiff's affidavit concerning Evans' "routine" work hours is insufficient to create a genuine issue of material fact to dispute Plaintiff's rule violations. Plaintiff's affidavit does not dispute the violations on the dates charged, nor does she dispute the other rule violations cited. Mr. Evans testified that although he "usually" left at 4:30, on the occasions that he documented Plaintiff's time discrepancies he stayed late and observed her. (Doc. 29-2 at 24).

regulations.

The third showing "ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not ...[subjected to adverse action] even though they engaged in substantially identical conduct to that which the employer contends motivated its [action against]...the plaintiff." *Id.* "If the plaintiff establishes the first or third showing, a permissive inference of discrimination arises. *Id.* Here, Plaintiff alleges that a male employee, Mr. Hupp, also had improper time-keeping records. However, other than her own affidavit concerning her "personal" observations that Mr. Hupp committed time-keeping offenses on unspecified dates (Doc. 31-1 at ¶6), she has offered no evidence that Mr. Hupp was similarly situated. Moreover, Plaintiff does not rebut the affidavit of Ms. Pence that four similarly situated male carriers were terminated for similar offenses. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may...consider the fact undisputed for purposes of the motion." Rule 56 (e)(2), Fed. R. Civ. P. With respect to the first and third bases under *Manzer*, then, Plaintiff cannot demonstrate that the reasons for her termination were without any basis in fact or that the reasons were factually insufficient to support termination.

For the second showing, where "the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate [the adverse action]," the plaintiff must introduce evidence of discrimination to show pretext. *Manzer*, 29 F.3d at 1084 (emphasis original). If a plaintiff fails to carry her burden to rebut a defendant's legitimate, nondiscriminatory reasons for the

14

termination, summary judgment is appropriate. *See Barnhart v. Peckrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1395 (6th Cir. 1993). Plaintiff must present evidence creating a genuine issue of fact that Defendant's articulated reason is false and was a pretext for discrimination based on Plaintiff's gender, or based on her prior informal EEO Complaint. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 506-507. Plaintiff's evidence must be sufficient in opposition to a motion for summary judgment for the Court to submit the issue of pretext to the jury. As the Sixth Circuit explained in *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 n.4:

> At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation. If so, her prima facie case is sufficient to support an inference of discrimination at trial. *Hicks*, 509 U.S. at 511, 113 S. Ct. 2742. But summary judgment is proper if, based on the evidence presented, a jury could not reasonably doubt the employer's explanation. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000). ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").

*Id.* Of course, in evaluating pretext, courts should not apply the three-part *Manzer* test in a formalistic manner. *See id.* "Pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Id.* The court must "ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation and, if so, how strong [that evidence] is." *Id.*

On the record presented, the Court concludes both as a matter of commonsense and as a matter of law that Plaintiff cannot show that Defendant's stated reasons for her

termination were a pretext either for gender discrimination, or in retaliation for Plaintiff's informal EEOC complaint against Evans.  Plaintiff offers – at most – only weak conjecture that the given reasons did not actually motivate Mr. Evans and Ms. Pence to fire her, or that the given reasons were not sufficient for termination.

In the absence of any discussion of the pretext issue in Plaintiff's memorandum, this Court construes Plaintiff's argument as suggesting pretext is implied by (1) the extra scrutiny that she was given by Mr. Evans; and/or (2) the failure of Defendant to discipline a male co-worker for similar violations.  With respect to the first construed argument, it is true that the Sixth Circuit has held that, in the context of a retaliation claim, a plaintiff can demonstrate pretext by showing that an employer increased its scrutiny of the employee, in order to discover a "legal, legitimate reason to fortuitously materialize" to cover up its true motivation for termination.  *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 285 (6th Cir. 2012) *cert. denied*, 12-1166, 2013 WL 1217957 (U.S. May 13, 2013)(additional internal quotation and citation omitted).

On the record presented, however, Plaintiff has failed to put forth sufficient evidence on this issue to submit to a jury.  Plaintiff has offered no evidence whatsoever that the discipline imposed by Mr. Osborne in March of 2007 for falsifying her time records was related to increased scrutiny or gender.   After she successfully grieved (through the CBA) a January 2008 attempt to terminate her employment for additional related violations, she agreed to retraining and that management would notify her of any performance issues in a timely manner.  On the date of her return in March of 2008, Mr. Evans notified her in writing that she would "be expected to run your route in an efficient

16

manner," with her time to be "monitored *daily*." (Doc. 29-2 at 30, Exhibit 6)(emphasis added). Plaintiff did not engage in protected activity by filing her first informal EEOC complaint until months later. Given this history, Plaintiff cannot show that the Defendant's scrutiny of her time-keeping *increased* after she engaged in protected activity, in a manner that would plausibly suggest pretext. *Compare Hamilton v. General Elec. Co.*, 556 F.3d 428, 436 (6th Cir. 2009)(increase in scrutiny after filing of EEOC complaint was "critical").

In addition, like the plaintiff in *Blizzard*, Plaintiff here has failed to offer evidence that Defendant did not have an "honest belief" in the reasons for termination, or that it did not reasonably rely "'on the particularized facts that were before it at the time the decision was made.'" *Blizzard*, 698 F.3d at 286 (discussing modified honest belief rule applicable in Sixth Circuit, and need for employee to allege more than a dispute over the facts upon which the discharge was based, additional citations omitted). "Lacking such proof, Blizzard's 'disagreement with [MTC's] honest business judgment regarding [her] work does not create sufficient evidence of pretext in the face of the substantial evidence that [MTC] had a reasonable basis to be dissatisfied.' *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1116 (6th Cir.2001)." *Id.*

The second possible evidence of pretext is Plaintiff's statement that she observed Mr. Hupp committing similar time-keeping violations. Other than Plaintiff's affidavit, she has offered no evidence that Mr. Hupp actually committed such offenses. Even assuming that Plaintiff's testimony would be sufficient to prove the existence of one or more time-keeping violations by Mr. Hupp, however, this testimony would still be

insufficient to raise a genuine issue of material fact that would preclude summary judgment. Plaintiff fails to offer any evidence that Mr. Evans or any other supervisor was aware of Mr. Hupp's alleged time-keeping discrepancies, that Mr. Hupp was subject to prior discipline or sent to mandatory additional training, or even that Mr. Hupp was a similarly situated full-time rural carrier (as opposed to a part-time substitute who might be held to different standards).[5] Plaintiff implies that Mr. Evans must have been aware of Mr. Hupp's alleged time discrepancies based upon Plaintiff's own observation and the fact that Evans was "usually present" when Mr. Hupp allegedly falsified his record. (Doc. 31-1 at ¶6). However, Mr. Evans has denied any knowledge of inaccuracies by Mr. Hupp, and testified that if he had been aware of any discrepancies, he would have imposed discipline. Ms. Pence also expressly denies knowledge of any other West Union carrier who falsified his or her time record. Lending credence to that assertion, Ms. Pence approved the termination of four male employees (at locations other than West Union) for similar falsification of records. (Doc. 29-3 at ¶12). Moreover, Plaintiff does not allege that Mr. Hupp committed *all* of the same violations, including failing to deliver mail in time for the distribution truck, deviating from the assigned route, and being the subject of complaints from customers. Therefore, Plaintiff has failed to show that Mr. Hupp was similarly situated to Plaintiff. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992).

The Court finds summary judgment to be appropriate in this case based upon

---

[5]Plaintiff's affidavit and memorandum indicate that Mr. Hupp was promoted to Plaintiff's full-time route only after her termination. Her affidavit suggests that up until that time, including at the time of the alleged misstatements of his time, "Hupp had …been a substitute carrier." (Doc. 31-1 at ¶6).

that "common sense inquiry" and the lack of any contrary evidence put forth by Plaintiff that would suggest that Defendant did not "honestly believe" in the proffered reasons for sending the April 2005 letters. *Accord, Majewski*, 274 F.3d at 1117. In the absence of evidence that either Plaintiff's gender, or her prior informal EEOC complaint, played any role at all in her termination for cause, this Court will not second-guess the Defendant's facially reasonable explanation for that adverse action. *See Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 627 (6th Cir. 2006)(a federal court is not a "'super personnel department,' overseeing and second guessing employers' business decisions.")(internal citation omitted). Put simply, it is not the duty of this Court on summary judgment to scour the record in an attempt to locate evidence to support Plaintiff's claims. *Abdulsalaam v. Franklin County Bd. Of Com'rs*, 637 F. Supp.2d 561, 576 (S.D. Ohio 2009)(citing *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379 (6th Cir. 2007)).

### 3. Contested Elements of Prima Facie Case

Although this Court finds that Defendant is entitled to summary judgment based upon Plaintiff's failure to offer or to discuss any evidence that Defendant's non-discriminatory reason for terminating her was pretextual, the Court will briefly address Defendant's alternative arguments that Plaintiff also fails to prove her prima facie case on either her gender or retaliation claims.

Defendant first argues that Plaintiff cannot establish the fourth element of her gender discrimination claim, because she has failed to offer any proof that other similarly situated employees falsified their time sheets but were not disciplined. Although Plaintiff testified that Mr. Hupp did so, as discussed, she has provided no

19

evidence that any supervisor was aware of that conduct, or that Mr. Hupp was similarly situated. Plaintiff admits that she is unaware of the discipline records of other employees. (Doc. 29-1 at 38). Mr. Evans testified that he was not aware of any other employees who had falsified their time records in a way similar to Plaintiff. (Doc. 29-2 at 31-33, 53). Ms. Pence's unrebutted affidavit that four male employees were terminated for similar offenses undermines any possible inference of gender bias concerning the alleged violations of Mr. Hupp. Therefore, the undersigned concludes that Defendant would alternatively be entitled to summary judgment based upon Plaintiff's failure to prove her prima facie case of gender discrimination.

Defendant also contests the "causal connection" element of Plaintiff's prima facie retaliation claim. Defendant argues that Plaintiff cannot establish that a "causal connection" existed between her protected activity and any claimed adverse action. Plaintiff alleges that the July 2008 letter from Evans, and ultimately her termination, both constituted retaliatory adverse actions for her June 2008 informal EEOC complaint. Defendant does not dispute that Plaintiff's informal EEOC complaint was protected activity, that Evans knew of that activity, or that he took adverse action against Plaintiff. However, Defendant does dispute the issue of causal connection. Plaintiff relies upon temporal proximity alone to prove the "causal connection" element. She argues that support for that inference is found in the mediated agreement that Evans would refrain from unfairly scrutinizing Plaintiff, or from talking about her behind her back. Plaintiff argues that even by Evan's own admission, his "undue and unequal scrutiny continued." (Doc. 31 at 9). Defendant denies the causal connection element, but the Court

20

concludes that the evidence on this discrete issue alone is ambiguous.  *See Hamilton v. General Elec. Co.*, 556 F.3d 428, 436 (6th Cir. 2009)(increase in scrutiny after filing of EEOC complaint was critical to establish causal connection).  Therefore, Defendant would not be entitled to summary judgment on the retaliation claim based upon the argument that Plaintiff cannot prove her prima facie case.  Of course, Defendant remains entitled to summary judgment on this claim based upon Plaintiff's failure to show pretext.

### III.  Conclusions and Recommendations

For the reasons discussed above, **IT IS RECOMMENDED THAT** Defendants' motion for summary judgment (Doc. 31) be **granted,** that all claims against all Defendants be dismissed, and that this case be **closed.**

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

21

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JOYCE NIXON                                              Case No. 1:11-cv-784

              Plaintiff,                             Barrett, J.
    v.                                              Bowman, M.J.


PATRICK DONAHOE, POSTMASTER GENERAL,

         Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).